IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARCIA JANE HANLON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 07-2165-CM-JTR |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The court finds that it cannot determine whether the Administrative Law Judge (ALJ) was aware of a psychological assessment performed by Dr. Neal Duetch (R. 431), or of a "Mental Impairment Questionnaire" completed by plaintiff's treating therapist, Ms. Sandy[1] Currie, LSCSW.  (R. 855-58).  The decision contains no mention of those opinions.

---

[1]Plaintiff addresses Ms. Currie as "Sandi" Currie, but the questionnaire at issue appears to contain the signature block of Sandy Currie.  (R. 858).

Moreover, although the ALJ discussed a psychological evaluation completed by Dr. Sheila Swearngin, the decision does not explain the weight given to Dr. Swearngin's opinion. Therefore, the court recommends remand for the Commissioner to properly consider these opinions, explain the weight accorded to each opinion in assessing plaintiff's mental residual functional capacity (RFC), and reevaluate the credibility of plaintiff's allegations in light of a proper evaluation of the medical source opinions.

**I.  Background**

Plaintiff applied for DIB and SSI, was denied initially and upon reconsideration, and sought a hearing before an ALJ. (R. 18). On Mar. 22, 2006, a hearing was held, and the ALJ filed his decision on Apr. 28, 2006. (R. 18-24). The ALJ determined that plaintiff is able to perform her past relevant work as a telemarketer or as a customer service representative and is, therefore, not disabled within the meaning of the Act or regulations. (R. 23). Consequently, he denied plaintiff's applications. (R. 24). Plaintiff disagreed with the decision, and sought but was denied Appeals Council review. (R. 10-14). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 4); <u>Blea v. Barnhart</u>, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

**II.  Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which

prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred: in evaluating the opinions of certain medical sources as discussed above, in determining the credibility of plaintiff's allegations of symptoms, and in assessing plaintiff's RFC for work activities. The Commissioner concedes, as he must, that the ALJ committed errors as alleged by plaintiff in evaluating the medical source opinions, but he explains how in his view a proper evaluation of the opinions would not have changed the final decision. Thus, he implies that any error committed was harmless. The Commissioner argues that the ALJ properly evaluated the credibility of plaintiff's allegations of symptoms and properly assessed plaintiff's RFC. As explained below, the court finds the ALJ erred in evaluating the medical source opinions at issue, and that the error is not

harmless. Remand is necessary to evaluate and explain the opinions.

## III. Analysis

With regard to plaintiff's mental impairments, the ALJ discussed a mental status evaluation prepared by Dr. Swearngin at the request of the state agency, and a psychiatric review technique form (PRTF) completed by a state agency psychologist. (R. 22)(citing Exs. B-22F, B-23F (R. 570-92)). The ALJ also mentioned "some current Global Assessment of Functioning between 45-50 but these levels of mental dysfunction are usually acute and improve with treatment." (R. 22). The ALJ did not cite to any authority for his assertion that an individual functioning at the 45-50 GAF[2] level is usually suffering from an acute condition which improves with treatment.

The ALJ found that plaintiff has "mild restrictions of activities of daily living, moderate social dysfunction, moderate

---

[2]Global Assessment of Functioning. A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 32. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)). A GAF score in the range of 41-50 indicates "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning.**" DSM-IV, at 32.

difficulties in maintaining concentration, persistence or pace[,] with no episodes of decompensation of extended duration" (R. 22), and concluded that plaintiff has moderate limitations in: (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to work in coordination with or proximity to others without being distracted by them, (4) the ability to accept instructions and respond appropriately to criticism from supervisors, and (5) the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  (R. 22).

The ALJ did not explain the relative weight he accorded to Dr. Swearngin's opinion or to the opinion of the state agency reviewing consultant, although he stated that he found the state agency reviewing consultant's analysis "a good review of claimant's mental functioning."  (R. 22).  One might assume from this finding that the ALJ accorded substantial weight to the reviewer's opinion and somewhat lesser weight to Dr. Swearngin's opinion.  However, the reviewer found plaintiff's mental impairments "not severe" (R. 576, 587), and the ALJ found them "severe." (R. 22)(finding "moderate" limitations in two of the four mental functional areas); compare 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)(a rating greater than "none" or "mild" in any of the four functional areas generally equates to a "severe" mental impairment).  This fact is inconsistent with

-7-

according significant weight to the reviewer's opinion because the ALJ found plaintiff's condition worse than did the reviewer.

The Commissioner suggests that the ALJ accorded significant weight to Dr. Swearngin's opinion, and explains how the evidence is consistent with such a finding. (Comm'r Br. 6-7). However, the ALJ did not explain the weight he accorded to Dr. Swearngin's, or any doctor's, opinion regarding mental impairments, and the decision does not cite to or weigh the evidence relied upon by the Commissioner to show significant weight was given to Dr. Swearngin's opinion. Therefore, were the court to find that the Dr. Swearngin's opinion is worthy of any particular weight, it would risk violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

It is not proper for the court to weigh the evidence in the first instance. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)(citing Cagle v. Califano, 638 F.2d 219, 220 (10th Cir. 1981)). Moreover, although there is evidence from which one might infer that Dr. Swearngin's opinion is consistent with the ALJ's RFC, Dr. Swearngin stated, "Issues of claimant's poor interpersonal skills in previous positions, negative attitude and difficulties tolerating psychological stress are concerns for this claimant's future employment." (R. 573). Thus, as plaintiff argues, Dr. Swearngin's opinion might be seen to

support greater restrictions in plaintiff's abilities.  It is for the ALJ to weigh the evidence, explain the weight given to each medical opinion, and explain how the evidence supports the conclusions reached.

Beyond his mention of current GAF scores, the ALJ made no mention of the more than one hundred and twenty pages of mental health treatment notes in the record.  (R. 260-88, 451-98, 601-16, 823-53, 859-62).  He did not mention either the opinion of Ms. Guerra, LSCSW, a social worker who had treated plaintiff (R. 617); the questionnaire completed by Ms. Currie (R. 854-58); or the opinion provided for plaintiff's treating physician by psychologist, Dr. Deutch.  (R. 450-51).

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20. C.F.R. §§ 404.1527(d), 416.927(d); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2007).  In addition to the Commissioner's view of the evidence as explained in his brief, and as viewed by plaintiff, the opinions cited above might be seen to support finding a more restrictive view of plaintiff's mental RFC than that found by the ALJ.  Yet, the ALJ did not explain how the opinions cited would affect his RFC assessment or how the evidence leads to a particular understanding regarding

plaintiff's mental RFC.  Thus, the court is left with two potential views of the evidence and no direction from the ALJ as to how the ambiguity was resolved.  As noted, it is improper for the court to weigh the evidence in the first instance. Therefore, remand is necessary for the Commissioner to properly evaluate the evidence and medical opinions regarding plaintiff's mental impairments, weigh those opinions, and explain how the evidence supports his conclusions.

As plaintiff acknowledged, Ms. Currie is not an "acceptable medical source," and her opinion does not qualify as a "medical opinion" as defined in the regulations.  However, shortly after the ALJ's decision at issue here, the Commissioner promulgated an SSR clarifying and explaining how the agency will consider opinions and other evidence from persons who are not "acceptable medical sources."  SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2007).  The Ruling explains that such opinions will be evaluated using the regulatory factors for evaluating medical opinions; id. at 331-32(citing 20 C.F.R. §§ 404.1527, 416.927); and explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  Id. at 333.  On remand,

the Commissioner must apply SSR 06-3p to the opinions expressed by Ms. Currie and Ms. Guerra.

Because a proper evaluation of the opinions from medical sources will potentially affect the Commissioner's credibility determination and RFC assessment, the court will not address plaintiff's allegations of error with respect to those determinations. Plaintiff may make her arguments to the ALJ on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 9th day of April 2008, at Wichita, Kansas.

        s/John Thomas Reid
        **JOHN THOMAS REID**
        **United States Magistrate Judge**